IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| MICHAEL W. HALIBURTON, II, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04-6062-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| CITY OF ALBANY POLICE | ) | |
| DEPARTMENT, PAT MARINER, Albany | ) | |
| City Police Chief, CAPTAIN | ) | |
| SHINHOLSTER, Acting Police Chief, | ) | |
| SCOTT McBRIDE, an Albany City Police | ) | |
| Officer, RYAN McHURON, an Albany | ) | |
| City Police Officer, TROY MICKELSON, | ) | |
| an Albany City Police Officer, ROBBIE | ) | |
| McKNIGHT, an Albany City Police | ) | |
| Officer, | ) | |
| | ) | |
| Defendants. | ) | |

Michael W. Haliburton, II
SID# 11534652
4005 Aumsville Hwy. SE
Salem, Oregon 97301

Pro Se Plaintiff

Page 1 - OPINION AND ORDER

Bruce L. Mowery
1212 Court Street, N. E.
Salem, Oregon 97301

Attorney for Defendants

KING, Judge:

Plaintiff Michael W. Haliburton II alleges state and federal constitutional claims against the City of Albany Police Department and several of its officers. Haliburton alleges he was harassed by the officers for several years because of his race and because of an interview he gave for a story in the local newspaper. Before the court is the Motion for Summary Judgment of Defendants City of Albany Police Department, McBride, McHuron, Mickelsen and McKnight (#50). For the reasons below, I grant the motion in part but allow three claims to continue to trial.

## FACTS

In September 1999, Haliburton was stopped by six police cars, detained at gunpoint, roughly handled, identified by the alleged victims, and arrested for Burglary, Attempted Rape, Kidnapping, and Sex Abuse. Haliburton was lodged at the Linn County Jail for ten days without a court appearance. On the eleventh day after Haliburton's arrest, he appeared before Judge Carol Bispham, who apologized to him because the alleged victims recanted at the Grand Jury. Judge Bispham told Haliburton that a person holding a grudge against him caused the alleged victims to falsely accuse him. Haliburton was released a few hours later.

Haliburton was interviewed by the local newspaper about his arrest. The article ran in the newspaper in November 1999 and discussed Haliburton's claims of discrimination and threats by members of the Albany Police Department.

Page 2 - OPINION AND ORDER

After the article appeared, Haliburton was pulled over many times by Albany Police Officers McBride, McHuron, Mickelson, and McKnight.  During the stops, the officers harassed Haliburton, taunted and humiliated him, mentioned the newspaper article, told Haliburton that he should leave town or they would make sure that he went away for a long time, threatened Haliburton with physical harm, and subjected him to racial slurs.  McBride arrested Haliburton several times for outstanding traffic warrants.  During the arrests, McBride would pull his gun and yell at Haliburton that if he did not comply, he would blow his head off.  Haliburton always complied with instructions from the officers during the stops.  In most cases, Haliburton was released after being threatened.  Haliburton was stopped and harassed in this manner 20 to 30 times a year during each of the years 2000, 2001, 2002, and 2003.

On July 30, 2003, Officer McBride was dispatched to the apartment of Angilique Cotton to investigate a report that Haliburton was violating a restraining order.  Haliburton ignored McBride's commands, stated that McBride would have to kill him to take him to jail, kept repeating "just shoot me" and "just kill me" numerous times, threw a large knife into the street, and appeared to be drawing a second weapon.  Haliburton was arrested and convicted on September 26, 2003 of Contempt of Court and Menacing.

On August 23, 2003, McBride was again dispatched to Cotton's apartment on a report that Haliburton was violating the restraining order.  There was an arrest warrant for Haliburton and McBride also concluded that Haliburton was in violation of the terms of the Release Agreement for the July 30 arrest.  McBride arrested Haliburton without incident.  The record does not contain the outcome of this arrest.

Haliburton states that his reports of crimes, such as burglary of his home and violation of a restraining order protecting him, were ignored by the police.

Officers McHuron, McBride, and McKnight[1] all state: (1) they were educated in criminal investigation, interview procedures, probable cause, and the use of force; (2) they were trained on the duty to observe, respect, and protect the constitutional rights of every person contacted; (3) they were supervised to assure that department policies and procedures were followed; (4) they knew that a violation of department policies would be thoroughly investigated and sanctions could be imposed; (5) they "had a reasonable suspicion, if not probable cause, to believe plaintiff had committed a crime or was about to commit a crime any time [they] made an investigatory stop of plaintiff. [T]hey had probable cause for any arrest of the plaintiff." Affs. of McHuron, McBride, and McKnight ¶ 7; and (6) they did not subject Haliburton to harassment, racial slurs, discrimination, or treat him differently than other detainees or arrestees because of his race or the 1999 newspaper interview.

Haliburton has been incarcerated by the State of Oregon since April 13, 2004 and has a scheduled release date of April 17, 2006.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate

---

[1] There is no affidavit filed by Officer Mickelsen, presumably an oversight. I will assume that his testimony would match that of the other three officers.

through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

A verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence. Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (complaint).

## DISCUSSION

I.  City of Albany Police Department

Haliburton alleges Section 1983 claims against the City of Albany Police Department.

Section 1983 applies to actions of "persons" acting under color of state law. Local governmental units or municipalities can be sued as a "person" under Section 1983 in *Monell* claims. Hervey v. Estes, 65 F.3d 784, 791 (9th Cir. 1995); Monell v. Department of Social Services, 436 U.S. 658 (1978). Other types of governmental associations are only subject to suit under Section 1983 if the parties that created them intended to create a separate legal entity. Hervey, 65 F.3d at 792 (intergovernmental narcotics team is not subject to suit).

Haliburton has not made a showing that the City of Albany intended to create a separate legal entity when it formed the Police Department. Typically, the city itself is sued and not the police department. See Keller v. City of Portland, No. CV 98-263-ST, 1998 WL 1060222, at *3 (D. Or. Nov. 13, 1998) (police department is a vehicle through which the city fulfills its policing functions.

I grant summary judgment and dismiss all claims against the City of Albany Policy Department.

II.     Other Individual Defendants

Defendants Pat Mariner and Captain Shinholster have not appeared in this action. The Marshal's Returns of Service for them were both returned unexecuted. Mariner, whom defendants assume is actually Pat Merina, retired April 15, 2000. Captain Shinholster retired January 30, 2004. Because neither defendant was properly served, I dismiss both from this action.

III.    Oregon Constitutional Claims

Haliburton's sixth and seventh claims are for violations of his right to be free from unreasonable search and seizure under Article 1, Section 9 of the Oregon Constitution and his right to be free from being treated with unnecessary rigor during an arrest under Article 1, Section 13 of the Oregon Constitution. No private right of action seeking damages for violations of the Oregon Constitution exists. Hunter v. City of Eugene, 309 Or. 298, 304, 787 P.2d 881 (1990) (freedom of speech under Article I, Section 8). Accordingly, I grant summary judgment and dismiss the sixth and seventh claims.

IV.     Statute of Limitations

Defendants correctly note that Section 1983 claims use the two year state statute of limitations for personal injury actions. Sain v. City of Bend, 309 F.3d 1134, 1139 (9th Cir. 2002); ORS 12.110. Defendants move for summary judgment on all claims prior to February 13, 2002, two years before Haliburton filed this action.

Section 1983 claims may rely on the continuing violation doctrine under which "a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period." DeGrassi v. City of Glendora, 207 F.3d 636, 644 (9th Cir. 2000). Haliburton has raised a factual issue that a continuing violation occurred here. Thus, I deny the motion based on this ground.

V.  Third and Fourth Claims

Haliburton's third claim alleges that he was retaliated against in violation of the Fourth Amendment. I agree with defendants that this claim is duplicative of some of the others I discuss below. Accordingly, I grant summary judgment dismissing the third claim.

Haliburton's fourth claim alleges that his constitutional right to privacy was violated. The constitutionally protected zone of privacy concerns two interests: (1) avoiding disclosure of personal matters; and (2) independence in making certain kinds of important decisions involving marriage, procreation, contraception, family relationships, child rearing, and education. Whalen v. Roe, 429 U.S. 589, 599-600, 97 S. Ct. 869 (1977). Haliburton's allegations do not concern either of these interests. I grant summary judgment dismissing the fourth claim.

VI.  Remaining Claims

Haliburton's first claim alleges a violation of his First Amendment right to freedom of travel and movement when he was stopped or detained without probable cause, harassed, and retaliated against for his interview that led to the newspaper article.

> The "right to travel" . . . embraces at least three different components. It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.

Saenz v. Roe, 526 U.S. 489, 498, 500, 119 S. Ct. 1518 (1999). Again, this is unrelated to Haliburton's factual allegations. I will construe his first claim to allege a First Amendment free speech retaliation claim. The second claim alleges a violation of the Fourth Amendment's prohibition against unreasonable search and seizure. The fifth claim alleges a race discrimination claim based on the Fourteenth Amendment's Equal Protection Clause.

Defendants make several arguments against these claims based on their testimony that they understood Haliburton's constitutional rights, they did not harass him, and they had probable cause for each arrest and reasonable suspicion for each investigatory stop.

If Haliburton's case was only based on the two arrests in July and August 2003 involving the violations of the restraining order, this defense might be adequate on which to base a summary judgment. Instead, Haliburton swears that he was harassed with racial slurs and references to the newspaper article during stops numbering between 80 and 120 over a four year period. This cannot be countered in summary judgment with a blanket statement that all stops passed constitutional muster. Further, qualified immunity does not protect the officers from liability here because Haliburton's testimony would establish constitutional violations. Consequently, I deny summary judgment against the First Amendment free speech retaliation claim, the Fourth Amendment unreasonable search and seizure claim, and the Fourteenth Amendment equal protection claim.

///

///

## CONCLUSION

The Motion for Summary Judgment of Defendants City of Albany Police Department, McBride, McHuron, Mickelsen and McKnight (#50) is granted in part. I will hold a conference shortly to determine how to proceed to trial on the three remaining claims.

IT IS SO ORDERED.

Dated this ___18th___ day of October, 2005.

                                                  /s/ Garr M. King  
                                                  Garr M. King  
                                                  United States District Judge